## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SAM MAVERICK SPIRITS, LLC | § | |
| PLAINTIFF, | § | |
| | § | CIVIL ACTION NO. 5:20-cv-00333 |
| v. | § | |
| | § | |
| ALAMO PREMIUM | § | |
| DISTILLERY, INC. d/b/a | § | |
| ALAMO DISTILLING COMPANY | § | JURY TRIAL REQUESTED |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Sam Maverick Spirits, LLC, by and through its undersigned counsel, hereby files this action against Defendant, Alamo Premium Distillery, Inc. (d/b/a Alamo Distilling Company), and in support, alleges and avers the following.

## PARTIES

1.     Plaintiff Sam Maverick Spirits, LLC ("Plaintiff," and "Alamo Whiskey") is a Texas limited liability company with its principal place of business at 115 Broadway, San Antonio, Texas 78205.

2.     Plaintiff Sam Maverick Spirits, LLC is owned by Kenneth Maverick, whose family name is the origin of the term "maverick."

3.     Defendant Alamo Premium Distillery, Inc. ("Defendant"), is a Texas corporation with a principal place of business at 621 Chestnut, San Antonio, Texas 78202.

4.     Defendant can be served with this complaint by serving its registered agent for service, Noel Burns, at 621 Chestnut, San Antonio, Texas 78202.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), 15 U.S.C. § 1121, Chapter 85 of the Judiciary and Judicial Procedure Code,

and has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) and this matter raises federal questions arising out of, and under, the Lanham Act, 15 U.S.C. § 1051 *et seq.*

6.      This United States District Court may exercise supplemental jurisdiction over the subject matter of this Civil Action pursuant to 28 U.S.C. § 1367(a) for any other state-law claim asserted herein arising from the same transactions or occurrences and implicating the same questions of fact and related questions of law.

7.      This United States District Court may exercise jurisdiction over Defendant on the ground that, *inter alia*, Defendant and/or Defendant's agents regularly conduct commerce in the State of Texas, deriving revenue and value therefrom, so as to purposefully avail itself of the privilege of conducting business within the State of Texas, and particularly in this District.

8.      This Court has personal jurisdiction over Defendant because Defendant sells its liquors using "ALAMO" in their product names in the state of Texas, including in the Western District of Texas.

9.      This Court has personal jurisdiction over Defendant because said Defendant purposefully availed itself of the privilege of conducting activities in the State of Texas and established minimum contacts sufficient to confer jurisdiction over said Defendant.

10.      Furthermore, the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

11.      This United States District Court may exercise jurisdiction over Defendant on the ground that, *inter alia*, the conduct of Defendant and/or Defendant's agents as alleged herein caused and continue to cause injury to Plaintiff in the State of Texas and particularly in this District.

12.     Defendant expected its actions to be of consequence in the State of Texas and in this District.

13.     Defendant engaged in activities constituting doing business in the state of Texas.

14.     Plaintiff is a Texas resident and citizen.

15.     Defendant is a Texas resident and citizen.

16.     Defendant markets and sells its ALAMO branded products to Texas residents throughout the state including the Western District of Texas.

17.     After 2016, Defendant has maintained a website soliciting business from Texas residents at its distillery in connection with its liquor products using "ALAMO" in their names, such as ALAMO Whiskey and ALAMO Bourbon (hereafter collectively referred to as "Defendant's ALAMO-branded products" or "Defendant's ALAMO-branded liquors").

18.     Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**FACTUAL BACKGROUND**

19.     Early in the 1800s, a man named Samuel Augustus Maverick moved to Texas from the eastern United States. Texas was a place of wide-open land, rich soil, cattle ranches and cowboys.

20.     Samuel Maverick had just completed law school. He was present at the Alamo and elected as messenger and representative for the 1836 San Antonio de Bexar meeting at Washington-on-the-Brazos.  Because he was one of the only survivors, he harbored a survivor's guilt, he then returned to San Antonio to make his home next to the Alamo.  He vowed to spend his life honoring his comrades who were all killed at the Alamo on March 6, 1836.  After the

3

Alamo fell, he made his homestead next to the Alamo and developed the downtrodden area calling it "Alamo City.  115 Broadway, the home of Sam Maverick Spirits is made on the site of the original Maverick family homestead.  He went on to serve as San Antonio mayor, Texas Congress, Judge and many of service roles. He was a signer of Texas Declaration of Independence. As the years passed, Mr. Maverick added to his property in Texas. Before long, he owned huge pieces of land and donated many public parks to San Antonio. To this day, the Plaintiff allows the city to use family owned land in Alamo Plaza directly west of the Alamo for public use.

21.     Samuel Maverick did not brand his calves, which is how the word "maverick" was introduced into the American language. It meant a calf without a brand.

22.     As time passed, the word "maverick" took on a wider meaning. It came to mean a person who was too independent to follow even his or her group. Samuel Maverick was a maverick in two ways. It was his name, of course. And it described his decision not to follow the tradition of ranchers to brand their cattle.

23.     Samuel Maverick also made his own wine, brandy and whiskey

24.     As the legend goes, Samuel Maverick rode off from the Alamo on March 2, 1836 to represent San Antonio de Bexar at Washington-on-the-Brazos. But, before he did, he left whiskey with his comrades, all of whom died at the Alamo on March 6, 1836.

25.     No visit to San Antonio is complete without a pilgrimage to the iconic Alamo. Just steps away from the original Maverick family homestead, Plaintiff's Kenneth Maverick is again selling ALAMO WHISKEY®, a direct nod to the Maverick family's storied Texas roots, patriarch Samuel Maverick, and the legend of the presence of his homemade whiskey at the Alamo.

26.     In 2016, Kenneth Maverick, the great, great, great-grandson and direct lineal descendant of Samuel Maverick, began work on his distillery to market Plaintiff's ALAMO WHISKEY® brand.

27.     ALAMO WHISKEY® (hereafter referred to as Plaintiff's ALAMO WHISKEY®"), distilled by Plaintiff Sam Maverick Spirits, LLC, is a four-grain blend featuring a fair amount of corn that is aged for precisely one day in new American oak barrels.

28.     Plaintiff's ALAMO WHISKEY® is described as:

A grain forward whiskey distilled from the Maverick family mashbill, aged in new oak for 1 day with a nose of light brown sugar, candied cinnamon, creamed corn, and black pepper. The palate is delightfully smooth with notes of crème brulee, corn pudding, vanilla, and spice. The finish is mellow with lingering notes of spearmint, cardamom, and allspice.

29.     On October 19, 2016, Plaintiff filed an Intent to Use trademark application (hereafter referred to as "ITU application") No. 87208516 in the United States Patent and Trademark Office ("USPTO") for "ALAMO WHISKEY" in International Class 33 for "Whiskey; Whiskey spirits."

30.     An ITU application allows an applicant to apply for a trademark that has not yet been used in commerce. Use in commerce refers to the usage of your trademark in connection with selling or offering the relevant goods or services. After the initial filing, the applicant must file a Statement of Use once the mark has been used in connection with the goods or services identified in the application.

31.     If a trademark has not been used in commerce (e.g., sales of goods or services under the proposed mark), then an ITU application can provide significant benefits.

32.     By filing an ITU application, an earlier filing date applies even though the product has not been launched or sold.

33.     This earlier filing date, or "priority date," can be a significant procedural advantage since the USPTO will not use later-filed applications for similar marks or later legally used trademarks to block your application and registration and use.

34.     In competitive situations where third parties may be watching closely, an ITU application allows the filer to secure an earlier priority date before others learn of the new mark upon a product launch.

35.     If an ITU application matures into a registration, the ITU filing date will be treated under the law as the date of first use in commerce.

36.     This "constructive use" of the mark means that the law treats the filer of an ITU application as if they had begun using the trademark in commerce as of the filing date.

37.     This substantive advantage can be critical in a case where someone begins using the trademark after your ITU filing date.

38.     For example, an entity filed an ITU application on October 19, 2016 and began legally using the mark in commerce on June 12, 2019.

39.     In the interim, a third party began using a confusingly similar mark on similar goods/and services in July 2017 after the October 19, 2016 ITU filing date, but before the ITU application filer's actual use in commerce.

40.     When the ITU application registers on September 17, 2019, the ITU application filer has priority because the October 19, 2016 constructive use date precedes the July 2017 actual use date of the third-party competitor.

41.     Plaintiff's ALAMO WHISKEY® trademark application was examined by the Trademark Examining Attorney in the United States Patent and Trademark Office and a notice of allowance was issued on December 19, 2017.

42.     Plaintiff obtained a Certificate of Label Approval ("COLA") from the United States Department of the Treasury, Alcohol and Tobacco Tax and Trade Bureau ("TTB") for ALAMO WHISKEY on June 12, 2019.

43.     In order to have a valid trademark use, one must have a COLA.

44.     Plaintiff filed its statement of use on June 25, 2019 and obtained U.S. trademark Registration No. 5,863,490 for ALAMO WHISKEY® on September 17, 2019 in International Class 33 for Whiskey and Whiskey Spirits.

45.     Because of the rights created by trademark registration in the USPTO, between October 19, 2016 and September 17, 2019, Plaintiff invested over one million dollars in its ALAMO WHISKEY® distillery and brand.

46.     Defendant incorporated with the Secretary of State of Texas on February 4, 2015 as Alamo Premium Distillery, Inc. by Noel Burns and Daniel Taylor.

47.     Filing Articles of Incorporation, a Certificate of Formation, an Assumed Name Certificate, and/or a "dba" does not give you any rights to use a name in commerce.

48.     Filing a formation document with the Secretary of State to create a corporation or other entity with a given legal name only prevents the Secretary of State from filing a formation document that states a legal name that the Secretary determines is not distinguishable in its records.

49.     Simply filing a formation document with a legal name does not authorize you to use the legal name in violation of someone else's rights to the name and it does not prevent someone else from using that name in Texas commerce.

50.     No earlier than June 26, 2015, Burns and Taylor leased 1,100 square feet of warehouse space not visible from the street in an industrial park near the San Antonio International

Airport at 540 Sandau Road, Suite 213, San Antonio, TX 78216 and obtained a distillery license to make and sell their first two products, TEXAS MOONSHINE and TEXAS RUM.

51.  Defendant obtained a COLA from the TTB for TEXAS RUM on June 23, 2015.

52.  Defendant obtained a COLA from the TTB for TEXAS MOONSHINE on June 26, 2015.

53.  No earlier than June 26, 2015, Defendant first used Alamo Premium Distillery as a trade name for liquor distribution services.

54.  Defendant obtained a COLA from the TTB for TEXAS CRAFT WHISKEY on July 20, 2015.

55.  Defendant obtained a COLA from the TTB for TEXAS MOONSHINE on February 23, 2016.

56.  In 2017, Defendant realized it had a branding problem and decided to change its product names by using "ALAMO" as its new brand.

57.  Defendant obtained a COLA from the TTB for ALAMO RUM on March 24, 2017.

58.  Defendant obtained a COLA from the TTB for ALAMO MOONSHINE on April 3, 2017.

59.  Defendant obtained a COLA from the TTB for ALAMO BOURBON on April 4, 2017.

60.  Defendant obtained a COLA from the TTB for ALAMO WHISKEY on April 5, 2017.

61.  Defendant obtained a COLA from the TTB for ALAMO CRAFT WHISKEY on April 14, 2017.

62.     Defendant filed an assumed name certificate under Alamo Distilling Company with the Secretary of Texas on July 10, 2017.

63.     In September 2017, Defendant moved from its original small location at the airport to a 7,000-square-foot building near downtown in an industrial area on 621 Chestnut Street, San Antonio, Texas 78202, shown as follows:



64.     On September 23, 2017, Defendant had a grand opening of its new Chestnut Street location and first offered for sale Defendant's ALAMO-branded liquors, such as ALAMO Bourbon, ALAMO Craft Whiskey, ALAMO Rum, and ALAMO Dark Rum.

65.     After the first five years, Defendant claims it overcame branding issues, a distributor going bankrupt, and the ups and downs of introducing products.

66.     By March of 2019, Defendant was producing only three primary products: ALAMO Bourbon Black Label, Catimore Coffee Liqueur, and ALAMO Vodka because it found the moonshine market too small and the rum market dominated by long-established brands.

67.     In 2020, Defendant leased a new facility at 2030 East Houston Street, San Antonio, Texas 78202.

68.     Defendant obtained a COLA from the TTB for ALAMO DISTILLING CO. on December 14, 2018.

69.     Plaintiff is the first user of ALAMO WHISKEY® for whiskey.

70.     Defendant's belated use of ALAMO Whiskey, ALAMO Bourbon and ALAMO Vodka are used on goods sold to the same customers as our client's products.

71.     Various alcoholic beverages have been shown to be related goods for the purposes of the likelihood of confusion analysis.

72.     Distilling's use of ALAMO as its trademark is likely to cause confusion and lead consumers to mistakenly believe Distilling's products are affiliated with Plaintiff's ALAMO-branded products and/or that Plaintiff has approved or endorsed Defendant's products.

73.     Defendant's de minimis use of "Alamo Premium Distillery" as a mere trade name was not enough to create a public association between ALAMO as a brand name and trademark and Defendant's distilling and spirits business before Plaintiff's October 19, 2016 priority date.

74.     While a designation may function as both a trade name and a trademark or service mark, tradenames must not immediately be conflated with trademarks and service marks.

75.     The Trademark Act does not provide for registration of mere trade names.

76.     Use of a business name, as listed on the COLA registrations and labels as shown, do not qualify as trademark use.

77.     Defendant has no ALAMO trademark use prior to October 19, 2016.

78.     Defendant's limited use of "Alamo Premium Distillery" did not perform the function of a trademark.

79.     The "Alamo Premium Distillery" trade name—as used on the Defendant's labels—was intended only to identify the business entity, not to function as a trademark use in identifying the spirits sold.

80.     Alamo Premium Distillery only began doing business as Alamo Distilling Company in June 2017 in preparation for its rebranding, move to a larger facility, and grand opening for later that year.

81.     The Alamo Premium Distillery business name does not function as a trademark or service mark because it is not distinctive enough to identify its goods and services.

82.     The impact of the use of "Alamo Premium Distillery" on customers was negligible prior to October 19, 2016.

83.     Defendant's de minimis use of "Alamo Premium Distillery" was not enough to create a public association between ALAMO and Defendant's distilling and spirits business in the slightly over a year before October 19, 2016 considering the Defendant's diluted use of Alamo.

84.     Defendant's use of the ALAMO mark to identify its spirits on Facebook was de minimis before October 19, 2016.

85.     Public interaction with Defendant's Facebook posts were de minimis prior to October 19, 2016.

86.     Defendant's Facebook page reveals only four (4) reviews of the distillery prior to October 19, 2016, compared with seven (7) in 2017, nine (9) in 2018, and fourteen (14) in 2019.

87.     Defendant's sales before October 19, 2016 were de minimis.

88.     Public knowledge of Defendant prior to October 19, 2016 was limited, even if Defendant happened to have small sales prior to October 19, 2016.

89.     The September 23, 2015 tasting at Alamo City Liquors listed the names of the products TEXAS RUM and TEXAS MOONSHINE.

90.     There was no public association of ALAMO as a trademark with Defendant prior to October 19, 2016.

91.     Defendant had no use of Alamo analogous to trademark use prior to October 19, 2016.

92.     Defendant's de minimis use of "Alamo Premium Distillery" as a trade name in the fall of 2015 is not legally sufficient to tack any alleged priority growing out of trade name use in 2015 to Defendant's ALAMO Whiskey and ALAMO Bourbon.

93.     Tacking in general is only allowed in very rare and exceptionally narrow instances and the standard for tacking is exceedingly strict.

94.     Tacking is available only when the original name Alamo Premium Distillery and the revised trademark ALAMO Whiskey or ALAMO Bourbon are legal equivalents in that they create the same, continuing commercial impression so that consumers consider both as the same mark.

95.     The standard of legal equivalence is higher than that used in evaluating two competing marks for likelihood of confusion, and even if the two marks are confusingly similar, they still may not be legal equivalents.

96.     A later mark should not materially differ from or alter the character of the mark attempted to be tacked and should be indistinguishable from the original mark.

97.     Defendant's later marks, ALAMO Whiskey and ALAMO Bourbon, materially differ from Alamo Premium Distillery and cannot reasonably be tacked.

98. Any priority that may exist in Alamo Premium Distillery cannot be tacked onto Defendant's ALAMO Whiskey and ALAMO Bourbon because they are not legal equivalents.

99. Defendant filed no trademark applications to register its ALAMO branded liquors first used in 2017.

100. Defendant has no trademark registrations for its ALAMO branded liquors.

## COUNT I: FEDERAL TRADEMARK INFRINGEMENT

101. Alamo Whiskey incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

102. Defendant's distribution, marketing, promotion, offering for sale, and sale of its ALAMO Whiskey and ALAMO Bourbon is likely to cause confusion, mistake, or deception as to the source, affiliation, sponsorship, or authenticity of Defendant's goods.

103. Because of Defendant's unauthorized use of the name ALAMO Whiskey and ALAMO Bourbon for whiskey which is confusingly similar to Plaintiff's federally registered ALAMO WHISKEY® mark for whiskey, the public is likely to believe that the Defendant's goods have been manufactured, approved by, or are affiliated with Plaintiff's ALAMO WHISKEY®.

104. Thus, Alamo Whiskey's ability to gain revenue through the sale of embroidered sticks using Plaintiff's ALAMO WHISKEY® mark for whiskey is limited.

105. Defendant's unauthorized use of facsimiles of the ALAMO WHISKEY® mark for whiskey and bourbon falsely represents Defendant's liquor as emanating from or being authorized by Alamo Whiskey and places beyond Alamo Whiskey's control the quality of products associated with the ALAMO WHISKEY® mark.

106.    Defendant's infringement of the ALAMO WHISKEY® mark is willfully intended to reap the benefit of the goodwill of Alamo Whiskey, and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

107.    Because of Defendant's wrongful conduct, Alamo Whiskey has suffered and will continue to suffer substantial damages.

108.    Under 15 U.S.C. § 1117(a), Alamo Whiskey is entitled to recover damages, which includes all profits Defendant has made as a result of their wrongful conduct.

109.    In addition, because Defendant's infringement of Alamo Whiskey's ALAMO WHISKEY® trademark is willful, the award of actual damages and profits should be trebled pursuant to 15 U.S.C. § 1117(b).

110.    Alamo Whiskey is also entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a). Alamo Whiskey has no adequate remedy at law for Defendant's wrongful conduct because, among other things, Defendant's direct infringement, contributory infringement, and inducing infringement constitutes harm to Alamo Whiskey and its ALAMO WHISKEY® mark such that Alamo Whiskey could not be made whole by any monetary award; if Defendant's wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing materials; and Defendant's wrongful conduct, and the resulting damage to Alamo Whiskey, is continuing.

111.    Alamo Whiskey is also entitled to recover its attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117.

**COUNT II: FEDERAL FALSE DESIGNATION OF ORIGIN OR SOURCE**

112.    Alamo Whiskey incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

113.    Alamo Whiskey's ALAMO WHISKEY® mark is distinctive and indicates to consumers that its goods and its services originate from a single source.

114.    Alamo Whiskey's ALAMO WHISKEY® mark on its products and services symbolizes the substantial goodwill of Alamo Whiskey resulting in significant sales of its high-quality goods and services.

115.    Defendant's false designations of origin or source are likely to cause confusion, to cause mistake, or to deceive as to the origin or source of Defendant's goods or services.

116.    Defendant's use in commerce of false designations of origin or source is likely to cause consumers to believe that Defendant's ALAMO WHISKEY and ALAMO BOURBON goods or services and Alamo Whiskey's ALAMO WHISKEY® goods or services come from the same origin or source, or that Alamo Whiskey sponsors or approves the goods or services of Defendant, or that Defendant and Alamo Whiskey are somehow affiliated, connected, or associated with one another when in fact they are not.

117.    Defendant's use in commerce of false designations of origin or source is injuring the goodwill of ALAMO WHISKEY®.

118.    The actions of Defendant constitute a violation of the federal Lanham Act, 15 U.S.C. § 1125.

119.    At no time has Alamo Whiskey authorized Defendant to create, distribute, sell, offer for sale, use, or otherwise put into commerce Defendant's ALAMO WHISKEY and ALAMO BOURBON liquor.

120.    Defendant is knowingly and intentionally misrepresenting and falsely designating to the public the affiliation, connection, association, origin, source, endorsement, sponsorship, and approval of Defendant's ALAMO Whiskey and ALAMO Bourbon liquor to create a likelihood of

confusion by the public as to the affiliation, connection, association, origin, source endorsement, sponsorship, and approval of Defendant's products.

121.   Pursuant to 15 U.S.C. § 1116, Alamo Whiskey is entitled to preliminary and permanent injunctive relief to prevent Defendant's continuing use of false designations of origin or source.

122.   Defendant's false designations of origin or source is irreparably injuring Alamo Whiskey's goodwill and eroding Alamo Whiskey's share of market, and unless enjoined by this Court, will continue to do so.

123.   Pursuant to 15 U.S.C. § 1117, Alamo Whiskey is entitled to damages for Defendant's violations, an accounting of profits made by Defendant on sales of its goods or services, and recovery of Alamo Whiskey's costs of this action.

124.   Defendant has willfully and wantonly used false designations of origin or source, and its actions have been calculated to confuse, mislead, or deceive consumers, and to injure the goodwill of Alamo Whiskey.

125.   The intentional engaging in false designation of origin or source by Defendant makes this an exceptional case entitling Alamo Whiskey to an award of three times its actual damages and recovery of its reasonable attorneys' fees.

## COUNT III: COMMON LAW TRADEMARK INFRINGEMENT

126.   Alamo Whiskey incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

127.   Alamo Whiskey's use of the ALAMO WHISKEY® mark predates any alleged use by Defendant in the United States.

128.     Defendant's use of ALAMO Whiskey and ALAMO Bourbon is calculated to deceive the relevant consuming public into accepting and purchasing Defendant's products in the mistaken belief that they are Alamo Whiskey's products, or that that they are sponsored by, connected with, or supplied under the supervision of Alamo Whiskey.

129.     Such actions permit, and will continue to permit, Defendant to use and benefit from the goodwill and reputation earned by Alamo Whiskey to readily obtain customer acceptance of its goods offered for sale, and to give Defendant's goods a salability they would not otherwise have, all at Alamo Whiskey's expense.

130.     Defendant' aforementioned acts constitute trademark infringement in violation of the common law of the State of Texas.

131.     As a direct and proximate result of Defendant's above-described conduct, Alamo Whiskey has suffered and will continue to suffer damages in an amount that is not presently ascertainable but will be established at trial.

132.     Unless enjoined by this Court, Defendant's above-described conduct will cause irreparable injury, for which Alamo Whiskey has no adequate remedy at law, injury to the reputation and good will of Alamo Whiskey as well as confusion and deception among consumers.

133.     Defendant's acts complained of herein have been and are grossly negligent, deliberate, willful, intentional, in bad faith, malicious, with full knowledge and conscious disregard of Alamo Whiskey's rights, were intended to cause confusion, and to trade off the good will in Alamo Whiskey's ALAMO WHISKEY® mark, making this an exceptional case and entitling Alamo Whiskey to enhanced damages and attorneys' fees at least as provided under Texas Civil Practices & Remedies Code § 41.003.

### COUNT IV: COMMON LAW UNFAIR COMPETITION

134. Alamo Whiskey incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

135. Defendant's use of the mark is calculated to deceive the relevant consuming public into accepting and purchasing Defendant's products in the mistaken belief that they are Alamo Whiskey's products, or that that they are sponsored by, connected with, or supplied under the supervision of Alamo Whiskey.

136. Such actions permit, and will continue to permit, Defendant to use and benefit from the goodwill and reputation earned by Alamo Whiskey to readily obtain customer acceptance of the goods offered for sale, and to give Defendant's goods a salability they would not otherwise have, all at Alamo Whiskey's expense.

137. Defendant's adoption and use of the ALAMO Whiskey and ALAMO Bourbon marks on its goods constitutes unfair competition, palming off, passing off, and unjust enrichment in violation of the common law of the State of Texas.

138. By such use, Defendant has represented that its goods are those supplied by Alamo Whiskey.

139. This use creates likelihood that the public will be confused or deceived.

140. Defendant' aforementioned acts constitute unfair competition in violation of the common law of the State of Texas.

141. As a direct and proximate result of Defendant's above-described conduct, Alamo Whiskey has suffered and will continue to suffer damages in an amount that is not presently ascertainable but will be established at trial.

142.    Unless enjoined by this Court, Defendant's above-described conduct will cause irreparable injury, for which Alamo Whiskey has no adequate remedy at law, injury to the reputation and good will of Alamo Whiskey as well as confusion and deception among consumers.

143.    Defendant's acts complained of herein have been and are grossly negligent, deliberate, willful, intentional, in bad faith, malicious, with full knowledge and conscious disregard of Alamo Whiskey's rights, intended to cause confusion, and to trade off the good will in Alamo Whiskey's ALAMO WHISKEY® mark, thus making this an exceptional case and entitling Alamo Whiskey to enhanced damages and attorneys' fees, at least as provided under Texas Civil Practices & Remedies Code section 41.003.

## COUNT V: COMMON LAW PALMING OFF

144.    Alamo Whiskey incorporates by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

145.    Defendant has engaged in direct palming off and passing off, contributory palming off and passing off, and inducing palming and passing off its goods and services as originating or sponsored by Alamo Whiskey, in violation of the common laws of the State of Texas.

146.    Defendant's acts of palming off and passing off entitle Alamo Whiskey to recover its damages and costs of this action, together with an accounting of profits made by Defendant.

147.    Defendant's palming off and passing off its goods or services as originating or sponsored by Alamo Whiskey has been malicious and calculated to injure Alamo Whiskey and was with knowledge of Alamo Whiskey's prior rights and intentional.

148.    The willful, wanton and malicious nature of Defendant's conduct entitles Alamo Whiskey to an award of its reasonable attorney's fees and punitive damages.

149.    Defendant's palming off and passing off its goods or services as originating or sponsored by Alamo Whiskey is irreparably injuring Alamo Whiskey's goodwill and eroding Alamo Whiskey's share of the market; and unless enjoined by this Court, Defendant will continue to do so.

150.    Further, Alamo Whiskey may not have an adequate legal remedy in the event money damages cannot properly be calculated.

151.    Under the common law of the State of Texas, Alamo Whiskey is entitled to preliminary and permanent injunctive relief to prevent Defendant from continuing to palm off and pass off its goods and services and the goods and services of Alamo Whiskey.

## NOTICE OF LITIGATION HOLD REQUIREMENT

152.    Defendant is hereby notified that they are legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendant know, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereinafter collectively referred to as "Potential Evidence").

153.    As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings

and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, Android-based smart phones, Windows-based smart phones, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices of all of Defendant's agents or employees if Defendant's electronically stored information resides there.

154.    Defendant is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Defendant's claims and/or defenses. To avoid such a result, Defendant's preservation duties include, but are not limited to, the requirement that Defendant immediately notify their agents and employees to halt and/or supervise the auto-delete functions of Defendant's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## JURY DEMAND

155.    Plaintiff hereby demands a trial by jury.

## PRAYER

WHEREFORE, Plaintiff prays that:

WHEREFORE, Plaintiff demands judgment for itself and against Defendant by this Court as follows:

A.      Enter an injunction prohibiting Defendant and its respective officers, directors, agents, servants, employees, related companies, licensees, and all persons acting for, with, by, though, and under any of them, from any and all use and direct and indirect infringement of the Plaintiff's Marks, and any other Plaintiff's marks, names and/or logos, and false designations of origin or source and Defendant's dilution, false advertising, unfair competition and palming off or any derivation thereof directly or indirectly, for itself, or through, on behalf of, or in conjunction with the sale or offer of any products or services by Defendant;

B.      Enter judgment in favor of Plaintiff for actual damages in an amount to be determined by the Court, where such damages are trebled due to Defendant's willful and intentional disregard of Plaintiff's known rights, pursuant to at least 15 U.S.C. § 1117 and Texas Business & Commerce Code sections 16.102-16.104;

C.      Enter judgment in favor of Plaintiff for Defendant's profits in an amount to be determined by the Court, where such profits are trebled due to Defendant's acts of willful and intentional disregard and violation of Plaintiff's known rights, pursuant to at least 15 U.S.C.§ 1117 and Texas Business & Commerce Code sections 16.102-16.104;

D.      Award Plaintiff all costs of the action and reasonable attorneys' fees pursuant to the provisions of at least 15 U.S.C. § 1117 and Texas Business & Commerce Code sections 16.102-16.104;

E.      Order Defendant to file with this Court and to serve upon Plaintiff, within thirty (30) days after the entry and service on Defendant of an injunction, a report in writing and under

oath setting forth in detail the manner and form in which Defendant have complied with the injunctions;

F.     Allow Plaintiff recovery of all damages it has sustained because of Defendant' activities, and that said damages be trebled;

G.     Order that an accounting be directed to determine Defendant' profits resulting from the activities complained of herein, and that such profits be paid over to Plaintiff, increased as the Court finds to be just under the circumstances of the case;

H.     Allow Plaintiff recovery of its costs of this action and prejudgment and post-judgment interest; and

I.     Plaintiff be awarded such other relief as the Court deems just and equitable.

DATED this March 17, 2020.

Respectfully submitted,

By  /s/ Charles W. Hanor
Charles W. Hanor
Hanor Law Firm PC
750 Rittiman Road
San Antonio, Texas 78209
Telephone: (210) 829-2002
Fax: (210) 829-2001
chanor@hanor.com
Texas Bar No. 08928800

*Attorneys for Plaintiff*